UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| WACKENHUT SERVICES, INC., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) No. 3:08-CV-304 |
| | ) (Phillips) |
| INTERNATIONAL GUARDS UNION OF AMERICA, LOCAL NO. 3, | ) ) ) |
|     Defendant. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiff Wackenhut Services, Inc.'s ("WSI") Motion for Summary Judgment [Doc. 7], and defendant International Guards Union of America, Local No. 3's ("IGUA") Motion for Summary Judgment [Doc. 11]. WSI requests that the court vacate an arbitration award, whereas IGUA seeks enforcement of that award. WSI filed this action under the Labor Management Relations Act, 29 U.S.C. § 185(a).[1]

There are two issues in this case. First, should the arbitration award be enforced? Second, if the award is enforced, is the prevailing party entitled to attorney's fees and costs? For the following reasons, WSI's Motion for Summary Judgment [Doc. 7] is **DENIED**, and IGUA's Motion for Summary Judgment [Doc. 11] is **GRANTED IN PART AND DENIED IN PART**.

---

[1] Section 185(a) of the Labor Management Relations Act provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

1

Accordingly plaintiff's *vacatur* action is **DISMISSED WITH PREJUDICE**. WSI is **ORDERED** to comply with the arbitration award issued by Marsha Murphy on May 7, 2008, by furnishing the necessary financial records of the affected employees, and by paying each employee the amounts reflected in such records. In addition, the Court will award prejudgment interest on such payments, at a rate of 10% per annum pursuant to Tenn. Code. Ann. § 47-14-123, from the date that WSI stopped paying weekend premiums to employees who worked 12-hour shifts at the Y-12 Plant in Oak Ridge, Tennessee, to the date that WSI began paying weekend premiums to those employees in 2007.

## I.  BACKGROUND

This case involves a dispute between an employer and a labor union. WSI, the employer, provides security services to Department of Energy facilities located in Oak Ridge, Tennessee. This includes the Y-12 National Security Plant. The IGUA, which is a labor union, represents the security officers employed at the Y-12 Plant. As a labor union, the IGUA enters into collective bargaining agreements with WSI.

The dispute in this case stems from an arbitration award issued on May 7, 2008. WSI, the plaintiff in this lawsuit (and the loser at arbitration), wants the court to vacate the arbitration award. The issue before the Arbitrator was one of contract interpretation: Did the employer [WSI] violate the contract when it discontinued paying weekend premiums to 12-hour shift employees for hours they worked that were also paid as overtime premiums? Three contracts guided the Arbitrator's decision: the Memorandum of Understanding ("MOU"), the 2001 Collective Bargaining Agreement ("2001 CBA"), and the 2007 Collective Bargaining Agreement ("2007 CBA").

The 2001 CBA sets forth the terms of employment for regular hours, overtime hours, and

weekend hours. The 2001 CBA also carried forward the MOU, which governs the rights of employees assigned to 12-hour shifts. The 2001 CBA and MOU are separate documents, but they overlap in content because they govern employees assigned to 12-hour shifts.

In 2002, WSI stopped paying weekend premiums for officers assigned to 12-hour shifts on the weekend. These persons were already being paid overtime premiums for their work. WSI argues that it was not required to pay both weekend premiums and overtime premiums for officers assigned to 12-hour shifts on the weekend. In response, the IGUA filed a grievance against WSI, arguing that the 2001 CBA and MOU required WSI to pay weekend premiums to officers assigned to 12-hour shifts on the weekend.

On August 15, 2007, while the grievance was pending, the parties executed the 2007 CBA. The parties agreed to amend Article IV of the 2001 CBA, Section 3, by removing the phrase, "or for hours paid at overtime, holiday, or premium rates." This amendment had a significant effect: WSI began paying weekend premiums to 12-hour shift employees for hours they worked which were also being paid as overtime premiums.

Despite this new agreement, WSI still refused to pay weekend premiums to officers who had previously worked 12-hour shifts on the weekend and received overtime premiums for those hours. The events that led to the grievance occurred while the 2001 CBA was still in effect. Pursuant to Article XVI of the 2001 CBA, the issue was submitted to arbitration. The 2001 CBA provides for the arbitration of unresolved grievances that involve the interpretation of the contract. Marsha Murphy was selected as Arbitrator, and framed the issue as follows:

> Did the Employer [WSI] violate the contract and/or a long standing past practice when it discontinued paying weekend premiums to 12 hour shift employees for hours they worked that were also paid at an overtime rate of pay? If so, what is the appropriate remedy?

3

[Doc. 8-3 at 5]. Eventually, the Arbitrator eliminated "past practice" as a basis for her decision, narrowing the issue to one of contract interpretation: "I do not find the question of whether there was a 'past practice' compelling. Both parties are arguing that there is controlling contract language regarding this matter, and this case will be decided based upon what the contract states." [*Id*. at 11].

During the arbitration proceeding, the IGUA argued that the employees who worked 12-hour shifts on the weekend at the Y-12 Plant should have been paid weekend premiums. The IGUA requested payment for the period from when WSI stopped paying weekend premiums in 2002, to when WSI began making the payments in 2007. WSI argued that the weekend premiums for this period were prohibited by the 2001 CBA and the MOU.

On May 7, 2008, the Arbitrator issued a decision and award in favor of the IGUA. In sum, the arbitrator decided that the language of Section 9 of the MOU entitled the security officers to weekend premiums for *all* hours worked on Saturday and Sunday, even through they also received overtime premiums.

On August 4, 2008, WSI filed an action in *vacatur* to set aside the arbitration award. The IGUA then filed a counterclaim seeking enforcement of the arbitration award, plus costs and attorney's fees.

## II.    STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must construe the facts and draw all inferences therefrom in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zendith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also, e.g.*, *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 397 (6th Cir. 2007) ("The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the non-moving party."). With regard to issues where the moving party will not bear the ultimate burden of proof at trial, "the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The burden then shifts to the non-moving party to demonstrate the existence of genuine issues of material fact. *Id.* at 324. The non-moving party demonstrates the existence of genuine issues of material fact by "going beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file ....' " *Id.* If the non-moving party fails to meet this burden, the moving party is entitled to summary judgment.

III. **ANALYSIS**

  A. **The Arbitration Award Must Be Enforced Because the Arbitrator "Arguably" Construed the Contract**

The party seeking to vacate an arbitration award faces a heavy burden. This is because the court's jurisdiction is extremely limited in this area. Indeed, "[a] court's review of an arbitration award 'is one of the narrowest standards of judicial review in all of American jurisprudence.'" *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004) (quoting *Tennessee Valley Authority v. Tennessee Valley Trades and Labor Council*, 184 F.3d 510, 515 (6th Cir. 1999) *(per curiam)*). "Because the parties have contracted to have disputes settled by an arbitrator chosen by

them rather than a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Totes Isotoner Corp. v. Int'l Chemical Workers Union Council*, 532 F.3d 405, 411 (6th Cir. 2008) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38, 108 S.Ct. 364 (1987)).

The Sixth Circuit recently narrowed the scope of judicial review for labor-arbitration disputes. *See Mich. Family Resources, Inc. v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (*en banc*). In deciding whether to confirm or vacate a labor arbitration award, courts must ask:

> Did the arbitrator act 'outside his authority' by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator 'arguably construing or applying the contract'? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made 'serious,' 'improvident' or 'silly' errors in resolving the merits of the dispute.

*Id*. at 753. In other words, our review is confined to determining: (1) whether the dispute was committed to arbitration; (2) whether the arbitrator was, at least arguably, construing or applying the contract to resolve the dispute; and (3) whether the decision was tainted by any "procedural aberration" such as fraud, conflict of interest, or dishonest." *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 560 (6th Cir. 2008) (citing *Michigan Family Resources*, 475 F.3d at 753).

The parties agree that only the second question is relevant: whether the arbitrator was "arguably construing or applying the contract." This does not require the court to determine whether the arbitrator's interpretation was "correct." As the Sixth Circuit has explained, "the question is not whether the arbitrator correctly construed the contract; it is whether he was '*arguably construing or applying the contract*.'" *Martin Marietta Materials, Inc. v. Bank of Oklahoma*, 304 Fed.Appx.

6

360, at *3 (6th Cir. 2008) (quoting *Michigan Family Resources*, 475 F.3d at 753) (emphasis added). Thus, courts must enforce arbitration awards even if they believe that "the arbitrator made 'serious,' 'improvident' or 'silly' errors resolving the merits of the dispute." *Michigan Family Resources*, 475 F.3d at 753. The focus is not on the merits of the arbitrator's decision, but rather, the process. "The Court's repeated insistence that the federal courts must tolerate 'serious' arbitral errors suggests that judicial consideration of the merits of a dispute is the rare exception, not the rule." *Id*.

Under this highly deferential standard, only the most egregious awards will be vacated:

> This view of the 'arguably construing' inquiry no doubt will permit *only the most egregious awards to be vacated*. But it is a view that respects the parties' decision to hire their own judge to resolve their disputes, a view that respects the finality clause in most arbitration agreements, and a view whose imperfections can be remedied by selecting better arbitrator.

*Id*. at 753-54 (internal quotes omitted) (emphasis added). Courts will vacate an arbitration award only if it was so "untethered from the agreement that it casts doubt on whether he was engaged in interpretation . . ." *Id*. at 754. Plaintiff argues that the Arbitrator's decision was so "untethered from the agreement" because the Arbitrator misinterpreted the contracts. Plaintiff attacks the content of the Arbitrator's decision, rather than the process. However, courts generally do not look at the merits of the arbitrator's decision in determining whether to enforce it. In fact, it does not matter whether the Court even agrees with the arbitrator:

> That the deciphering of this contract required implications and inferences sufficies by itself to show that the arbitrator was permissibly engaged in interpretation. The arbitrator, it is true, made a legal error, perhaps even a serious legal error, but an error of interpretation nonetheless, which does not authorize us to vacate the award.

*Id*. at 756. Indeed, it is the " rare exception, not the rule" to consider the merits of an arbitration award. *Id*. at 753. In addition, if there is doubt that the arbitrator "engaged in interpretation," courts will presume "that the arbitrator was doing just that." *Id*.

7

Measured by these modest requirements, the arbitration award must be confirmed. Like the arbitrator in *Michigan Family Resources*, the Arbitrator quoted from and analyzed the pertinent provisions of the contracts. In *Michigan Family Resources*, the Sixth Circuit held that the arbitrator was "arguably construing the contract" because:

> The arbitrator's ten-page opinion has all the hallmarks of interpretation. He refers to, quotes from and analyzes the pertinent provisions of the agreement, and at no point does he say anything indicating that he was doing anything other than trying to reach a good-faith interpretation of the contract.

*Id*. at 754. Likewise, the Arbitrator's opinion has all the "hallmarks of interpretation." A hearing was conducted where the parties called witnesses, cross-examined witnesses, introduced exhibits, and made oral argument. The arbitrator then issued a nine-page opinion divided into the following sections: "The Submission Issue," "Background Facts," the "Union's Position," the "Employer's Position," and "Findings and Conclusions."

The court finds that the Arbitrator fully considered the parties' arguments, which she summarized as follows:

> The Employer argues that in deciding how 12 hour shift employees should be paid one must read the Memorandum of Agreement on pages 70 to 74 of the contract, Article III, Section 4- Weekend Premium and Article IV, Section 6- Pyramiding Overtime. The Union maintains that when the Employer initiated 12 hour shifts the parties negotiated new language and different rules for employees working a 12 hour shift and those rules are contained in the language of the Memorandum of Agreement. The Union maintains that when the MOA specifies different working conditions from those detailed in the body of the CBA (including Article III and Article IV), the MOA is controlling for 12 hour shift employees. The Union makes the more persusaive argument.

[Doc. 8-3 at 10]. The Arbitrator then explained why she accepted the IGUA's argument:

> The MOA in paragraph 9 states that for 12 hour shift employees 'weekend premiums will be paid for all regular shift hours worked on Saturday and Sunday.' The language is clear and unequivocal- premiums are paid for all shift hours worked. That directly contradicts the language contained in the body of the CBA which states that

> employees will not be paid weekend premiums on 'hours paid or at overtime.' But, as with the contradiction in the language that establishes how many hours an employee must work to get overtime pay, the language of the MOA is controlling for the 12 hour shift employee.

[*Id.*].

The Arbitrator's opinion demonstrates that she was at least "arguably" construing the contracts. The Arbitrator referenced and analyzed the 2001 CBA and MOU, and there is no indication that the Arbitrator "was doing anything other than trying to reach a good-faith interpretation of the contract." *Michigan Family Resources*, 475 F.3d at 754. Because the Arbitrator was "arguably" construing the contract, the arbitration award must be enforced.

Put simply, it has to be a truly egregious decision by an arbitrator for a court to vacate an award. Plaintiff argues that it "would be hard to imagine a more fundamental and contractually prohibited 'disregard . . . of the terms of the Agreement. [Doc. 8 at 12-13]. In other words, plaintiff argues that the arbitration award should be vacated because the arbitrator's interpretation was egregious. This could not be farther from the truth.

In *Liberty Nursing Center of Willard, Inc. v. United Food & Commercial Workers' Union Local 911*, a district court vacated an arbitration award because the arbitrator did not "arguably" construe the contract. 525 F.Supp. 2d 933, 937 (N.D. Ohio 2007). In that case, an employer brought an action against a union seeking to vacate an arbitration award. *Id*. The arbitrator found that the employer was over-charging union members for dental and vision insurance. *Id*. The district court vacated the arbitration award because the arbitrator did not "arguably" construe the collective bargaining agreement. *Id*. In particular, the arbitrator's award was vacated because the arbitrator changed the meaning of a term that was crystal clear- "$14.00." *Id*. As the court explained, the arbitrator "determined that $14.00 could mean something other than fourteen single primary units

of United States currency." *Id*.

Unlike the present case, the arbitrator in *Liberty Nursing* was called to interpret "cut-and-dry numerical language." *Id*. Essentially, the arbitrator in *Liberty Nursing* decided that "$14.00" does not mean "fourteen dollars." Few words, phrases, or provisions could be as clear as the cut-and-dry numerical language at issue in this matter." *Id*. However, in the present case, the language in the CBA is ambiguous and subject to multiple, reasonable interpretations. *Liberty Nursing* does not support plaintiff's position- it defeats it. These cases could not be farther apart.

In summary, this is a normal case in which a contract had an ambiguous meaning and the arbitrator was called upon to interpret it. There is nothing egregious about what the arbitrator did. Plaintiff may be upset with the arbitrator's decision, but that is not a basis for vacating it. So long as the arbitrator was "permissibly engaged in interpretation," courts will enforce arbitration awards. *Michigan Family Resources*, 475 F.3d at 756. Accordingly, plaintiff's Motion for Summary Judgment [Doc. 7] is **DENIED**, and their *vacatur* action is **DISMISSED WITH PREJUDICE**.

### B. The Court Will Award Prejudgment Interest on the Arbitration Award, But Not Attorney's Fees or Costs

Defendant seeks attorney's fees and costs for having to defend this action. Defendant argues that it is entitled to attorney's fees because WSI did not have a "reasonable chance to prevail." [Doc. 12 at 6]. In particular, defendant argues:

> These assertions are supported by the 2001 CBA and MOU, whereby the parties agreed to resolve disputes between [them] through binding arbitration. The assertions are further demonstrated by Arbitrator Murphy's arbitration decision clearly being in accord with the three (3) elements of the Michigan Family 'procedural aberration' test.

[*Id*. at 6-7]. Under the defendant's reasoning, an action in *vacatur* would be "frivolous" if the court enforced the arbitration award under *Michigan Family Resources*. Consequently, any time an

10

arbitration award was enforced under *Michigan Family Resources* the losing party would have to pay attorney's fees. To equate failure under *Michigan Family Resources* with "frivolousness" would create a fee-shifting rule for *vacatur* actions. This would have a significant chilling effect on those wishing to challenge arbitration awards.

The Court must strike a balance: it does not want to discourage others from challenging arbitration awards, but it must compensate those who have been waiting to have their award enforced. Awarding attorney's fees is too steep a punishment and would have a chilling effect on those who want to challenge arbitration awards. What about cases where a party has a strong justification for challenging an arbitration award? If the party knew that it would have to pay attorney's fees if it lost, it might not bring such action. The court is concerned about the situation where a party has a meritorious claim, but won't file suit out of fear of paying attorney's fees.

Instead of awarding attorney's fees, the appropriate remedy is to enforce the arbitration decision and award prejudgment interest. In *Quaker Oats Company v. International Chemical Workers Union, Local 397*, the Sixth Circuit affirmed an arbitrator's decision and then awarded prejudgment interest at 11% per annum. 986 F.2d 1422, 1993 WL 47199 (6th Cir. 1993). Like the present case, the plaintiff in *Quaker Oats* filed an action under the Labor Management Relations Act, 29 U.S.C. § 301(a). *Id.* In addition to enforcing the arbitration award, the district court awarded prejudgment interest and attorney fees. *Id.* Attorney fees are awardable under the Labor Management Relations Act ("LMRA") if a party pursues or defends a lawsuit in bad faith or without justification." *Id.* at *3 (citing *Knollwood Cemetery v. United Steelworkers*, 789 F.2d 367, 369 (6th Cir. 1986)). Under the LMRA, an award of prejudgment interest may also be awarded at the discretion of the district court. *Quaker Oats Co.*, 986 F.2d 1422, 1993 WL 47199, at *3 (citing

11

*Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 989-90 (1982)). In *Quaker Oats*, the Sixth Circuit held that the district court abused its discretion in awarding attorney fees and erred in setting the prejudgment interest rate at 11% per annum. 986 F.2d 1422, 1993 WL 47199, at *3. Because the lawsuit was not pursued without justification, the awarding of attorney's fees was an abuse of discretion. *Id*. While the Sixth Circuit agreed that prejudgment interest was appropriate, it found that 11% per annum was too high. *Id*. The Sixth Circuit held that the district court should have looked to Tennessee law because "no federal statute or case mandates a specific prejudgment interest rate . . ." *Id*. In particular, the Sixth Circuit held that the prejudgment interest rate should have been awarded at 10% per annum under Tenn. Code. Ann. § 47-14-123. *Id*.

Based upon *Quaker Oats*, the Court will look to Tenn. Code. Ann. § 47-14-123 to determine the prejudgment interest rate. That provision provides:

> Prejudgment interest . . . may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum . . .

Tenn. Code. Ann. § 47-14-123. Accordingly, the court will award prejudgment interest at 10% per annum. This compensates the party that has been waiting to have the arbitration award enforced, while also not having a chilling effect on those who want to challenge arbitration awards. Accordingly, defendant's Motion for Summary Judgment [Doc. 11] is **GRANTED IN PART AND DENIED IN PART**.

## III. CONCLUSION

Accordingly, plaintiff's Motion for Summary Judgment [Doc. 7] is **DENIED** and defendant's Motion for Summary Judgment [Doc. 11] is **GRANTED IN PART AND DENIED IN PART**, whereby plaintiff's *vacatur* action is **DISMISSED WITH PREJUDICE**. WSI is

**ORDERED TO COMPLY WITH THE ARBITRATION AWARD** issued by Marsha Murphy on May 7, 2008, by furnishing the necessary financial records of the affected employees, and by paying each employee the amounts reflected in such records. In addition, the Court will award prejudgment interest on such payments, at 10% per annum pursuant to Tenn. Code. Ann. § 47-14-123, from the date that WSI stopped paying weekend premiums to employees who worked 12-hour shifts at the Y-12 Plant in Oak Ridge, Tennessee, to the date that WSI began paying weekend premiums to those employees in 2007.

**IT IS SO ORDERED**.

ENTER:

s/ Thomas W. Phillips
United States District Judge